UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CATO, JR., | CASE NO. 1:02-CV-5486-REC-SMS-P |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT SUNIGA'S MOTION FOR SUMMARY ADJUDICATION ON PLAINTIFF'S FIRST AMENDMENT CLAIM BE GRANTED |
| v. | |
| J. R. WESTPHAL, et al., | |
| Defendants. | (Doc. 46) |

I.  Procedural History

Plaintiff James Cato, Jr. ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint filed April 30, 2002, against defendants Westphal, Mounce, and Velasquez under the Eighth Amendment for damages based on the use of excessive force after the annual TB test was administered, and against defendant Suniga under the First Amendment for injunctive relief based on the confiscation of plaintiff's adult publications.[1] (Doc. 45.) On October 21, 2004, pursuant to the court's order September 23, 2004, defendant Suniga filed an amended motion for summary adjudication on plaintiff's First Amendment claim against him. (Doc. 46.) Plaintiff filed

---

[1] On September 23, 2004, defendants Westphal, Mounce, and Velasquez were granted summary adjudication on plaintiff's excessive force claim against them with respect to the force used prior to and during the administration of the annual TB test; defendant DeAzevedo was granted summary adjudication on plaintiff's excessive force claim against him; defendant Overly was granted summary adjudication on plaintiff's Fourth and Fourteenth Amendment claims against him; defendant Tristan was granted summary adjudication on plaintiff's First Amendment claim against him; and defendant Suniga was granted summary adjudication on plaintiff's First Amendment damages claim against him on qualified immunity grounds.

1

an opposition on December 29, 2004.[2] (Doc. 50.) On April 5, 2005, pursuant to the court's order of February 24, 2005, defendant Suniga filed a supplement to his motion. (Docs. 52, 53.) Plaintiff filed a response to the supplement on June 6, 2005. (Doc. 54.)

II.     Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586

---

[2] Plaintiff was notified of the requirements for opposing a summary judgment motion on January 30, 2003. (Doc. 11.)

n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

///

III. <u>Undisputed Facts</u>[3]

1. On July 24, 2001, mailroom staff employee Suniga confiscated four adult publications addressed to plaintiff through the U.S. mail.

2. On August 13, 2001, defendant Suniga confiscated two more adult publications addressed to plaintiff.

3. On November 13, 2001, defendant Suniga confiscated four more adult publications addressed to plaintiff.

4. Defendant Suniga confiscated the publications pursuant to various subsections of section 3006(c) of Title 15 of the California Code of Regulations.

5. Section 3006(c) authorizes the confiscation of contraband, which includes certain types of sexually explicit material, or material which is otherwise reasonably deemed by staff to be a threat to legitimate penological interests.

IV. <u>Discussion</u>

    A.    <u>Challenge to Constitutionality of Section 3006(c)</u>

In his complaint, plaintiff alleges that section 3006(c) of Title 15 of the California Code of Regulations violates his right under the First Amendment to possess legally acquired adult publications and adult literature. (Doc. 1, Comp., p. 7.) Plaintiff alleges that defendant Suniga's confiscation of four publications on July 24, 2001, a book and a publication on August 15, 2001, and four publications on November 13, 2001, violated his right under the First Amendment to possess adult material. Plaintiff alleges that the materials were not "hardcore." (<u>Id</u>., p. 7-8.)

Prisoners clearly have "a First Amendment right to send and receive mail." <u>Witherow v. Paff</u>, 52 F.3d 264, 265 (9th Cir. 1995). However, not every infringement on this right rises to the level of a constitutional violation. The question is whether the policy at issue in this action *impermissibly* infringed upon plaintiff's right to receive publications, resulting in a violation of plaintiff's First Amendment rights.

///

---

[3] The Undisputed Facts are taken from the Findings and Recommendations filed on July 26, 2004, which addressed the motion for summary judgment upon which the pending amended motion is based.

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84 (1987). "Thus, [a] prisoner retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Ashker v. California Dep't Of Corr., 350 F.3d 917, 922 (9th Cir. 2003) (internal citations and quotations omitted). "A prison regulation that impinges on inmates' constitutional rights therefore is valid only if it is 'reasonably related to legitimate penological interests.'" Ashker, 350 F.3d at 922 (quoting Turner, 482 U.S. at 88). "A regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." Turner, 482 U.S. at 89.

However, "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Turner, 482 U.S. at 84 (internal quotations and citations omitted). Thus, "'deference is accorded to prison authorities in order to avoid hampering their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration,'" Ashker, 350 F.3d at 922 (quoting Turner, 482 U.S. at 85, 88), and the regulation must be upheld if it is reasonably related to legitimate penological interests. Mauro v. Arpaio, 188 F.3d 1054, 1058 (9th Cir. 1999) (citing to Turner, 482 U.S. at 84-85 (internal quotations omitted)).

In determining the reasonableness of the regulation, the court must consider the following factors: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives." Turner, 482 U.S. at 89-90.

### 1. Rational Connection to Legitimate Penological Purpose

In considering the first Turner factor, the court must "(1) determine whether the regulation is legitimate and neutral, and (2) assess whether there is a rational relationship between the governmental objective and the regulation." Ashker, 350 F.3d at 922.

> In determining whether there is a rational relationship between the purported objective and the regulation, the level of scrutiny applied to the judgment of prison officials depends on the circumstances in each case. If an inmate presents sufficient evidence to refute a common-sense connection between a legitimate objective and a prison regulation, ... the state must present enough counter-evidence to show that

5

Case 1:02-cv-05486-REC-SMS   Document 56   Filed 08/09/05   Page 6 of 11

> the connection is not so remote as to render the policy arbitrary or irrational." If, however, the inmate does not present evidence sufficient to refute a common-sense connection between the regulation and the government objective, prison officials need not prove that the banned material actually caused problems in the past or that the materials are likely to cause problems in the future. The only question is whether prison administrators reasonably could have thought the regulation would advance legitimate penological interests.

Ashker at 922-23 (internal quotations and citations omitted).

Section 3006 governs contraband and, in relevant part, disallows inmates from possessing any matter containing or concerning matter of a character tending to incite violence or physical harm to any person; or which depicts, displays, or describes penetration of the vagina or anus, or contact between the mouth and the genitals; or which depicts, displays, or describes an excretory function including semen. Cal. Code Regs. tit 15, § 3006(c). Defendant contends that the objective of the policy "is to maintain the security of the institution, to promote the rehabilitation of its inmates, and to reduce sexual misconduct, in particular sexual harassment of female correctional officers and medical staff." (Doc. 46, Amend. Mtn., 3:4-7 & Doc. 47, Hansen Dec. ¶ 2.) Defendant contends that "inmates may use such images to taunt or provoke other inmates or prison employees, which could easily lead to a physical altercation or other conduct which would directly undermine the security interests of [the] institution," and that "the restriction is generally meant to help create an atmosphere at the institution which reduces hostility and aggressive conduct, and which is conducive to the institution's rehabilitative objectives." (Amend. Mtn., 3:7-12 & Hansen Dec. ¶ 2.)

Defendant has set forth sufficient evidence to establish the common-sense connection between the regulation and the government objective. Plaintiff disputes that the regulation promotes rehabilitation or is in place to reduce sexual misconduct. (Doc. 50, 2nd Opp., p. 2.) Plaintiff's bare challenge is insufficient to refute the common-sense connection between the regulation and the stated objective. It does not matter whether the policy in fact advances Wasco's legitimate interests. Mauro v. Arpaio, 188 F.3d 1054, 1060 (9th Cir. 1999) (quotations and citations omitted). Given that plaintiff did not refute the common-sense connection, defendant is not required to submit evidence demonstrating "that the connection is not so remote as to render the policy arbitrary or irrational." Ashker v. California Department of Corrections, 350 F.3d 917, 922 (9th Cir. 2003) (quotations and citation omitted).

6

### 2. Alternative Means of Exercising Right

The second factor requires consideration of "whether there are alternative means of exercising the right that remain open to prison inmates." Turner, 482 U.S. at 90. "Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to correctional officials . . . in gauging the validity of the regulation." Id. (internal quotations and citations omitted).

Defendant contends that the right at issue is the right to receive sexually explicit material. (Doc. 52, 2nd Amend. Mtn., 4:8-9.) Defendant contends that the regulation does not ban all materials with sexual content but instead is limited to matter that would incite violence or which are obscene without the meaning of the regulation. (2nd Amend. Mtn., 4:9-12 & Doc. 53, Hansen Dec., ¶ 3.) Defendant contends that inmates are generally allowed to possess educational, medical, or scientific material which describe or depict the human body. (2nd Amend. Mtn., 4:1314 & Hansen Dec., ¶ 3.)

Plaintiff contends that all material depicting frontal nudity is now banned,[4] and that with respect to the allowance of educational, medical, or scientific material, this allowance demonstrates that the regulation does not serve a penological interest, because nudity is nudity. (Doc. 54, 2nd Opp., 4:22-24 & 5:7-12.) While defendant has submitted some evidence that there are alternate means to the exercise of the right in question, plaintiff has not submitted any evidence that are no avenues available to receive sexually explicit material. In addition to allowing educational, medical/scientific, and artistic materials that are sexually explicit, the regulation does not ban all sexual material. The regulation does not ban photographs of clothed females, for example, and does not ban other sexual material, as long as the material is not obscene within the meaning of the regulation and does not depict frontal nudity. See Mauro, 188 F.3d at 1061. Accordingly, the court finds that the second factor weighs in favor of defendant.

---

[4] Plaintiff's claim in this action is not based on the confiscation of material depicting frontal nudity. Plaintiff's materials were confiscated pursuant to section 3006(15) because they depicted mouth-to-genital contact, penetration of the vagina, and/or excretion of semen, and/or contained material that tended to incite violence or physical harm to a person. (Doc. 42, Findings and Recommendations, 17:13-21.) To the extent that plaintiff is attempting to restate his claim as one challenging section 3006(17) which bans all frontal nudity, he may file a new action. Plaintiff may not, in his opposition, alter his claim so he can, in this action, challenge a different subsection.

7

1          3.      Impact of Accommodating Right

2     The third factor requires consideration of the impact that the "accommodation of the asserted

3 constitutional right will have on guards and other inmates . . . ." Turner, 482 U.S. at 90. Defendant

4 contends that accommodating an unrestricted right to sexually explicit material would lead to an

5 increase in the sexual harassment of female officers and others, and to violence among inmates

6 stemming from the possession or use of such material. (Doc. 52, 2nd Amend. Mtn., 4:19-23 & Doc.

7 53, Hansen Dec. ¶ 4.) Defendant contends that a hostile work environment would be created,

8 particularly for female staff, and that the overall safety and security of employees, visitors, and

9 inmates would be jeopardized. (2nd Amend. Mtn., 4:23-5:1 & Hansen Dec. ¶ 4.)

10    Plaintiff's contentions that he has never once seen inmates fight over explicit materials and

11 that sexual harassment of female officers will never cease are unpersuasive. (Doc. 54, 2nd Opp.,

12 5:16-27.) The Ninth Circuit has recognized that the impact of unrestricted access to sexually explicit

13 materials would be significant because it might lead to fights which could jeopardize the safety of

14 employees and inmates, and because it would expose female employees to sexual harassment and

15 a hostile work environment. Mauro, 188 F.3d at 1061-62. Accordingly, the third factor weighs in

16 favor of defendant.

17          4.      Absence of Ready Alternatives

18    "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison

19 regulation." Turner, 482 U.S. at 90. Plaintiff bears the burden of demonstrating "that there are

20 obvious, easy alternatives to the regulation." Mauro, 188 F.3d at 1062.

21    Plaintiff contends that the obvious and easy alternative to the regulation is to utilize the

22 disciplinary procedure already in place for inmates who misbehave. (Doc. 54, 2nd Opp., 6:20-21.)

23 Plaintiff's suggestion is unpersuasive. Defendant has established that the policy was enacted "to

24 maintain the security of the institution, to promote the rehabilitation of its inmates, and to reduce

25 sexual misconduct, in particular sexual harassment of female correctional officers and medical staff."

26 (Doc. 46, Amend. Mtn., 3:4-7 & Doc. 47, Hansen Dec. ¶ 2.) The bare suggestion that other existing

27 rules and regulations be utilized to discipline inmates when necessary is not an obvious, easy

28 alternative to the regulation, which specifically targets sexual material determined by correctional

officials to create the precise problems the regulation seeks to alleviate. Plaintiff has not set forth any alternative that can fully accommodate his rights at a de minimis cost to valid penological interests.

Accordingly, after consideration of all four Turner factors, the court finds that defendant is entitled to summary adjudication on plaintiff's First Amendment claim against him.

B.   Application of Section 3006 to Plaintiff's Materials

In his opposition, plaintiff denies he is challenging the constitutionality of the regulation and argues that he is challenging whether the confiscated materials fell within the purview of section 3006. (Doc. 50, Opp., p. 2 ¶ 4 & p. 3 ¶ 1.) The claim set forth in plaintiff's complaint appears to the court to be one challenging the constitutionality of the regulation. (Doc. 1, Comp., p. 7-8.) Nevertheless, in an abundance of caution, the court will address plaintiff's alternate theory.

As set forth in the Findings and Recommendations filed on July 26, 2004,

> Section 3006 governs contraband and, in relevant part, disallows inmates from possessing any matter containing or concerning matter of a character tending to incite violence or physical harm to any person; or which depicts, displays, or describes penetration of the vagina or anus, or contact between the mouth and the genitals; or which depicts, displays, or describes an excretory function including semen. Cal. Code Regs. tit 15, § 3006(c). On July 24, 2001, four magazines sent to plaintiff were disapproved and withheld by defendant Suniga on the ground that they showed mouth-to-genital contact and depicted penetration of the vagina. (Opp., Exhibit L, p. 1-2.) On August 15, 2001, one magazine sent to plaintiff was disapproved and withheld by defendant Suniga on the ground that it showed penetration and mouth-to-genital contact, and another publication was disapproved and withheld by defendant Suniga on the ground that it described penetration of the vagina and mouth-to-genital contact. (Opp., Exhibit L, p. 3; Exhibit M.) On November 13, 2001, defendant Suniga disapproved and withheld four magazines on the ground that they contained material that tended to incite violence or physical harm to a person, and depicted mouth-to-genital contact, penetration of the vagina, and excretion of semen. (Doc. 1, Comp., Exhibit D, p. 5-6.)

(Doc. 42, 17:9-22.)

Plaintiff argues that the Constitution and section 3006(c) require a determination whether plaintiff's publications taken as a whole lack artistic, literary, political, or scientific value, and that defendant Suniga did not make such a finding. (Doc. 50, Opp., p. 2 ¶ 2.) Plaintiff argues that only a few pages of his material violated section 3006(c) and that because he has never seen those pages, they are in question. (Id.)

///

Plaintiff's arguments are unpersuasive. Section 3006(c)(15) defines obscene material, in relevant part, as material that depicts mouth-to-genital contact, penetration of the vagina, and excretion of semen. Plaintiff was notified that his materials were being withheld for depicting mouth-to-genital contact, penetration of the vagina, and/or excretion of semen, and plaintiff does not deny that his publications contained those images. Plaintiff's contention that defendant needed to have reviewed the entire publication, weighed the images deemed obscene against the other material within the publication, and made a specific finding that the publication as a whole constituted obscene material is without support.

The court is equally unmoved by plaintiff's assertions that because only select pages of his publications were found to violate section 3006(c), the materials did not fall within the regulatory definition of obscene material and that because plaintiff did not see the pages, they are at issue. Material that depicts mouth-to-genital contact, penetration of the vagina, and/or excretion of semen is obscene material within the meaning of the regulation. Plaintiff does not deny that his publications contained pages depicting the images that defendant stated they depicted and which led to their confiscation. Further, there is no requirement that an inmate be shown the obscene material for the confiscation to be proper.

Accordingly, to the extent that plaintiff's complaint can be read to state a claim for relief on the basis that plaintiff's publications did not fall within the purview of section 3006 and were therefore wrongly confiscated by defendant, the court finds that there are no material issues of fact is dispute and defendant is entitled to judgment as a matter of law.

V.   Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that defendant Suniga's motion for summary adjudication on the First Amendment injunctive relief claim against him, filed October 21, 2004, be GRANTED, and that this action be set for trial on plaintiff's remaining Eighth Amendment claim against defendants Westphal, Mounce, and Velasquez.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written

objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 8, 2005**                                    /s/ Sandra M. Snyder
icido3                                                         UNITED STATES MAGISTRATE JUDGE